IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEVE SESKO,                                    )
                                                )
                    Plaintiff,                  )          Civil Action No. 08-cv-0151
                                                )
        v.                                      )
                                                )
COMMISSIONER OF SOCIAL SECURITY,                )
                                                )
                    Defendant.                  )

MEMORANDUM ORDER

CONTI, District Judge

### *Introduction*

Pending before this court for consideration is the appeal of Steve Sesko ("plaintiff")  from

the final decision of the Commissioner of Social Security ("defendant" or "Commissioner")

denying his claims for supplemental security income ("SSI") under Title XVI of the Social

Security Act ("SSA"),  42 U.S.C. §§ 1382-83.  Plaintiff argues that the determination made by

the administrative law judge (the "ALJ") should be remanded for reconsideration.  On September

15, 2008, plaintiff filed his motion for summary judgment.  On October 15, 2008, defendant filed

its cross-motion for summary judgment.  Because the decision of the ALJ is supported by

substantial evidence of record, plaintiff's motion for summary judgment will be denied and

defendant's motion for summary judgment will be granted.

### Procedural Background

Plaintiff protectively filed a claim for SSI on February 13, 2004, alleging an onset date of September 15, 1999. (R. at 13).[1]  His claim was initially denied on May 12, 2004.  (R. at 31).  By letter dated May 19, 2004, plaintiff was advised by the Social Security Administration that "[w]e have determined that your condition is not severe enough to keep you from working."  (R. at 34).  On July 12, 2004, plaintiff filed a timely request for an administrative hearing.  (R. at 39).  A hearing was scheduled for November 9, 2005.  (R. at 44-46).  Plaintiff, however, returned an Acknowledgment of Receipt (Notice of Hearing), which stated that he could not be present at the time and place scheduled for the hearing.  (R. at 52).  Specifically, the acknowledgment, dated October 10, 2005 stated, "I do not have an [sic] lawyer or transportation to Pitts [sic]."  (Id.)  Plaintiff was sent a Waiver of Your Right to Personal Appearance Before an Administrative Law Judge form, which he completed, signed and dated October 18, 2005.   (R. at 53).  On the waiver form plaintiff provided the following reasons for waiving his right to a hearing before the ALJ:

> I cannot afford a lawyer and I do not have any transportation.  Also I cannot sit for any length of time.  I also believe my appearance would not add any more information to my case.  Besides my family doctor (Dr. Melidona) I also request you contact Dr. Ferri [and] Dr. Matta of Human Services.

(Id.)

---

[1]  Plaintiff previously applied for SSI in 2002. (R. at 26).  He was represented by counsel and appeared at a hearing before an administrative law judge in  regard to that application on January 15, 2003. (Id.)  After an evaluation of medical records from Drs. Melidona and Gardner, the administrative law judge found that plaintiff's subjective complaints were not consistent with the records. (R. at 28).  The administrative law judge further found that plaintiff's impairments were severe within the meaning of the regulations, but not severe enough to meet or medically equal one of the impairments listed in the appendix.  (R. at 27).  Therefore, the administrative law judge found that plaintiff had the residual functional capacity to perform sedentary work and was not disabled.  (R. at 30).  His application for benefits was denied on May 22, 2003. (R. at 23).

The ALJ issued a decision dated February 11, 2006, denying plaintiff's claim for SSI. (R. at 10-21).  The ALJ specifically held that plaintiff was not under a disability within the meaning of the SSA.  (R. at 14).  Plaintiff filed a timely request for review of the ALJ's determination, which the Appeals Council denied on December 14, 2007.  (R. at 3-5).  On February 5, 2008, plaintiff  commenced this action and filed a complaint seeking judicial review of the ALJ's determination.  (Doc. No. 2).

### Plaintiff's Background and Medical History

Plaintiff was born on October 6, 1956.  (R. at 55).  At the time he applied for SSI he was forty-seven years old.  (Id.)  Plaintiff has a tenth grade education.  (R. at 76).  He has prior work experience as a baker.  (R. at 70-71).  Plaintiff alleges that he worked in a bakery from 1978 until January 1988, at which point he stopped working to take care of his sick mother. (R. at 70-71).  According to plaintiff, he began suffering on or around September 15, 1999, from chronic low back pain and right knee pain. (R. at 70).

### Medical History Regarding Plaintiff's Knee and Low Back Pain

Plaintiff's family doctor is Dr. Frank Melidona.  (R. at 72).   According to the earliest records in plaintiff's file, Dr. Melidona ordered an image of plaintiff's knee, which was taken on April 9, 2002.  (R. at 182).  The examination was negative for any fracture, dislocation, marginal erosions and narrowing.  (Id.)  The examining physician noted that there appeared to be vascular calcifications[2] around the knee. (Id.)

---

[2]  Calcification refers to "the process by which organic tissues becomes hardened by a deposit of calcium salts within its substance." Dorland's Illustrated Medical Dictionary, 244 (Saunders, et al., eds., 31st ed. 2007).

In June 2002, Dr. Melidona referred plaintiff to Dr. Stuart Gardner, an orthopedic surgeon regarding plaintiff's complaints of back and knee pain. (R. at 181).  According to Dr. Gardner's notes of plaintiff's visit on June 2, 2002, plaintiff's low back had bothered him for several years and his right knee had been bothering him for approximately four months prior to this visit. (Id.) The notes indicate that there had been no injury to the back or knee.  (Id.)  Dr. Gardner performed an exam and found no tenderness in the lumbar paraspinal region of plaintiff' back. (Id.)  Dr. Gardner found that plaintiff had a range of motion of the lumbar spine with mild discomfort. (Id.)  Plaintiff had medial and lateral joint tenderness in his right knee.  (Id.)  Dr. Gardner noted that there was crepitus[3] in the knee region with motion.  (Id.)  Dr. Gardner indicated that there was no swelling or effusion and no instability in the knee.  (Id.)  Plaintiff was injected with xylocaine and celestone[4] in his right knee.  (Id.)  Dr. Gardner advised plaintiff to treat with quad strengthening exercises and moist heat. (Id.)

Plaintiff saw Dr. Gardner again on July 11, 2002.  (Id.)  Dr. Gardner indicated that plaintiff did well for two weeks after the initial injection, but that the knee flared after that.  (Id.) On examination, Dr. Gardner found that there was no significant swelling in the knee, but there was joint tenderness.  (Id.)  Dr. Gardner noted that plaintiff had good mobility in his right knee. (Id.)  Plaintiff was given another injection and a prescription for physical therapy.  (Id.)

---

[3]  Crepitus is defined as: "the grating sensation caused by the rubbing together of the dry synovial surfaces of joints." Id. at 365.

[4]  Xylocaine is the trademark for preparations of lidocaine.  Lidocaine is defined as "a drug having anesthetic, sedative, analgesic, anticonvulsant, and cardiac depressant activities, used as a local anesthetic ..." Id. at 1712 . Celestone is the trademark for preparations of betamethasone, which is an anti-inflammatory drug. Id. at 317.

Plaintiff saw Dr. Gardner on October 23, 2003.  (R. at 180).  Dr. Gardner's notes from that visit indicate that plaintiff was suffering again from knee and low back pain.  (Id.)  Dr. Gardner examined plaintiff's low back and found no tenderness.  (Id.)  He found that there was a range of motion in the lumbar spine with mild discomfort with flexion and side bending.  (Id.)  According to Dr. Gardner, the motor exam indicated that plaintiff's lower extremities were intact. (Id.)  There was no swelling in the right knee and mild joint tenderness.  (Id.)  There was a range of motion with discomfort and flexion of the knee.  (Id.)  Dr. Gardner's impression at this time was that plaintiff had chronic low back pain and chronic right knee pain with degenerative change.  (Id.)  Plaintiff's right knee was injected with lidocaine and celestone and Dr. Gardner suggested exercises for plaintiff's back and knee.  (Id.)  Dr. Gardner noted that plaintiff was taking hydrocodone and 800 milligrams of ibuprofen for pain, as prescribed by Dr. Melidona. (Id.)

### Medical History Regarding Plaintiff's Anemia and Gastrointestinal Problems

On March 16, 2003, plaintiff was admitted to Jameson Hospital in New Castle, Pennsylvania with complaints of nausea and vomiting.  (R. at 111).  He was seen by Dr. Melidona who referred him to Dr. Hofius for a surgical consultation.  (Id.)  Dr. Hofius performed a colonoscopy and esophagogastroduodenscopy.[5]  (Id.)  According to the records, these tests showed gastric and duodenal ulceration.[6]  (Id.)  Plaintiff was severely anemic.  (Id.)  On March 20, 2003, he was discharged from Jameson Hospital.  (Id.)  At that time, he was prescribed

---

[5]  Esophagogastroduodenscopy is defined as an "endoscopic examination of the esophogus, stomach and duodenum." Id. at 523.

[6]  Gastric and duodenal ulceration refers to the development of ulcers on the stomach and duodenum.  Id. at 601, 1642.

5

Carafate,[7] Prevacid and Iron Sulfate.  (Id.)  Naprosyn for his back and knee pain was discontinued.  (Id.)

Plaintiff was referred to Dr. Simon for a follow-up evaluation.  (R. at 176).  In April 2003, Dr. Simon's impressions were that plaintiff had anemia, apparently as a result of chronic disease. (R. at 177).  At this point, Dr. Simon believed plaintiff had an underling lymphoma or other malignancy.  (R. at 178).  She ordered a CAT scan of the neck, chest, abdomen and pelvis and contacted Dr. Hofius regarding a biopsy of the lymph nodes.  (Id.)

After these tests were performed, Dr. Simon followed up with plaintiff in May 2003 and ruled out cancer as the cause of plaintiff's anemia.  (R. at 174).  At this point, she suspected that his anemia was due to an underling liver disease.  (Id.)  Plaintiff saw Dr. Simon again on August 12, 2003.  (R. at 172).  At this visit she noted that plaintiff was anemic and had an enlarged spleen.  (Id.)  She opined that plaintiff "may have anemia, a chronic disease, and he appears to have borderline iron deficiency, probably from his previous bleeding gastric ulcer."  (Id.)  She directed plaintiff to continue iron supplements and to follow up with an iron sulfate replacement. (R. at 173).  She directed plaintiff to see her after six months.  (Id.)

### The ALJ's Decision

In his decision, the ALJ determined that plaintiff knowingly and voluntarily waived, in writing, his right to appear and testify personally at a hearing.  (R. at 13).  The ALJ noted that plaintiff was unrepresented at the proceedings.  (Id.)

---

[7] Carafate is the brand name for sucrafalate, a drug used as an antiulcerative.  Id. at 257.

The ALJ evaluated the evidence using a five-step sequential evaluation process, as provided by 20 C.F.R. §§404.1520, in order to make a disability determination.  (R. at 14).  At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity at any time relevant to his decision.  (R. at 15).  At step two, the ALJ determined that plaintiff had the following severe impairments under 20 C.F.R. 416.920( c): cholelithiasis, anemia, enlarged spleen, past bleeding ulcer and symptoms of back and knee pain. (Id.)  Specifically, the ALJ found that plaintiff's conditions are severe "because they impose more than minimal restrictions on [plaintiff's] ability to carry out basic work-related functions." (Id.)

In determining that plaintiff's conditions are severe for purposes of step two, the ALJ considered the medical records provided by Dr. Melidona relating to plaintiff's back and knee pain, as well as treatment for anemia, fatigue and shortness of breath.  (R. at 16).  The ALJ considered treatment records from Dr. Gardner, specifically noting that plaintiff was treated with injections of anesthetics for chronic back and knee pain.  (Id.)  Additionally, the ALJ considered records provided by Dr. Hofius and Dr. Simon from 2003, relating to plaintiff's anemia and gastric ulcers.  (R. at 17).

At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meet the listed impairments found in 20 C.F.R. §§ 416.920(d), 416.925, 416.926.  (Id.)  In his decision, the ALJ stated that he considered plaintiff's complaints of chronic low back and knee pain, but found that plaintiff did not have clinical findings which met or equaled the requirements of Listing 1.02 Major Dysfunction of a Joint(s), (due to any cause), or Listing 1.04 Disorders of the Spine, in appendix 1.  (R. at 18).  The ALJ stated that he

considered the medical evidence relating to plaintiff's gastrointestinal problems under § 5.00-
Digestive System and anemia under § 7l00- Hemic and Lymphatic System.  (Id.)

With respect to plaintiff's impairments, including his complaints of back and knee pain
and gastrointestinal and anemia complaints, the ALJ found that "no physician or other caregiver
in the record has assessed that [plaintiff's] conditions meet or equal the Listings."  (Id.)  The ALJ
held that plaintiff's conditions were severe, but did not meet the impairments listed in the
regulations.  (Id.)

At step four, the ALJ found that plaintiff has the residual functional capacity[8] ("RFC") to
work.  (Id.)  Specifically, the ALJ determined, "[ t]he medical record documents severe medical
conditions, but nonetheless I find that [plaintiff] is capable of performing a full range of
sedentary work."  (Id.)  The ALJ found that, while plaintiff had complaints of back pain, there
was no medical evidence of a back impairment.  (Id.)  With respect to plaintiff's knee pain and
anemia, the ALJ concluded that these conditions would permit plaintiff to perform sedentary
work. (Id.)  The ALJ found that plaintiff "continues under doctors' cares and uses medications,
but there is no indication that he has required any further aggressive treatment for his
musculoskeletal, digestive, or anemic conditions."  (Id.)

In making this determination, the ALJ noted that he was unable to observe plaintiff's
appearance and demeanor at a hearing, but found that plaintiff's subjective complaints of pain
were not entirely credible.  (R. at 19).  Specifically, the ALJ found that plaintiff's reports of pain
were not consistent with his reported activity level.  (Id.)  In particular, the ALJ noted that

---

[8]  Residual functional capacity refers to an individual's ability to do physical and mental
work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§
404.1545, 416.945.

plaintiff reported that he functions in a two-story house, is able to care for his personal needs, perform household chores, make his bed and grocery shop. (Id.) The ALJ noted that plaintiff stated that he can "sit for 45 minutes to 1 hour and can carry weights of 5-10 pounds. [Plaintiff] does not say that after standing and walking for short periods of time he cannot sit again." (Id.) The ALJ addressed plaintiff's request that the ALJ contact Dr. Ferri and Dr. Matta of Human Services. The ALJ, however, concluded that the evidence of record was sufficient to determine that plaintiff is not disabled, and that further records would be unnecessary. (Id.) The ALJ found that plaintiff's physical complaints were reasonable, but his complaint that he cannot work was not consistent with his reported activity levels and, therefore, not credible. (Id.) The ALJ found specifically, "[w]hile [plaintiff] may experience some low back and right knee pain, fatigue, and weakness, he portrayed himself in written statements as being relatively active." (Id.) The ALJ noted that plaintiff has not required significant medication for pain control or any other type of aggressive treatments, which would prevent him from working. (R. at 19-20).

Finally, at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (R. at 20). The ALJ determined that plaintiff is "not disabled" under Medical-Vocation Rule 201.18. (R. at 21). Based upon the finding that plaintiff was not under a disability as defined by the SSA through the date of the ALJ's decision, plaintiff's claim for SSI was denied. (Id.)

*Standard of Review*

The Congress of the United States provides for judicial review of the Commissioner's denial of a claimant's benefits. 42 U.S.C. §405(g). This court must determine whether or not there is substantial evidence which supports the findings of the Commissioner. 42 U.S.C. §405(g). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)(quoting Richardson v. Perales, 402 U.S. 389 (1971)). This deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). This standard, however, does not permit the court to substitute its own conclusions for that of the fact-finder. Id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless whether the court would have differently decided the factual inquiry).

*Discussion*

Plaintiff argues that the ALJ's determination should be remanded for several reasons. Plaintiff argues that 1) the ALJ failed to develop a full record using a heightened duty of care to an unrepresented claimant; 2) the ALJ improperly found that plaintiff's subjective complaints were not fully credible; and 3) plaintiff did not knowingly and voluntarily waive his right to appear personally before the ALJ and, as an unrepresented claimant, suffered prejudice as a result of his inability to present relevant evidence. Plaintiff contends remand is appropriate. (Pl.'s Br., Doc. No. 8 at 19-20).[9] Each issue will be addressed.

---

[9]  The court notes that plaintiff did not challenge the ALJ's determination that the medical evidence, which the ALJ reviewed, does not meet the requirements of a severe impairment found in the Listings. He did not challenge the ALJ's finding, based on this evidence, that he has the

### 1.   Whether the ALJ Fully Developed the Record Prior to Making a Determination Regarding Plaintiff's Disability

Plaintiff argues that the ALJ "made a fundamental legal error" in failing to secure any medical evidence related to plaintiff's condition after the date of plaintiff's application in 2004. (Pl.'s Br., Doc. No. 8 at 8).  In particular, plaintiff argues that he requested that the ALJ secure medical records from Dr. Ferri and Dr. Matta.  Plaintiff argues that as an unrepresented claimant he was prejudiced by the ALJ's failure to secure updated medical records.  Plaintiff argues the ALJ ignored the heightened duty he owed to plaintiff, as an unrepresented claimant, by failing to secure any medical records dated after plaintiff's application for SSI, i.e., after February 2004 and before the date of the ALJ's February 14, 2006 decision.

In response, defendant argues that the ALJ fully developed the record and properly fulfilled the heightened duty owed to plaintiff.  Defendant argues that the ALJ properly considered "ample" medical evidence and all Plaintiff's subjective complaints, but found that the medical evidence did not support plaintiff's claim that he is unable to work as a result of his conditions.  Defendant asserts that plaintiff cannot succeed on this objection because he has not shown prejudice, i.e., there were no medical records shown that would have supported plaintiff's claims had they been requested.

When a claimant is unrepresented by counsel, the ALJ has a heightened duty to develop a full and fair record before making a determination regarding SSI.  Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979).  When a

---

RFC to engage in sedentary work.  Plaintiff instead challenges the legal sufficiency of the record, as developed by the ALJ and the sufficiency of plaintiff's waiver of right to counsel and hearing. The discussion will not discuss the sufficiency of the ALJ's determinations regarding each of the five-steps in the sequential evaluation process.

claimant is unrepresented, "the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Id. (quoting Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985)) (quotations omitted).  This heightened standard applies equally where the claimant has waived his or her right to appear at a hearing before the administrative law judge. Kattes v. Califano, 496 F.Supp. 385, 389 (E.D. Pa. 1980).  The adequacy of an administrative law judge's investigation is determined on a case-by-case basis.  Id. (citing Lashley v. Secretary of HHS, 708 F.2d 1048, 1052 (6th Cir. 1983)).  "The essential inquiry is whether 'the incomplete record reveals evidentiary gaps which result in prejudice to the claimant.'"  Massey v. Astrue, Civil Action No. 07-426, 2008 WL 4425853, at *2 (W.D. Pa. Sept. 30, 2008) (quoting Gauthney v. Shalala, 890 F.Supp. 401, 410 (E.D. Pa. 1995)).

In his Disability Report (R. at 69), plaintiff listed the following medical care providers as having records pertaining to his complaints of back and knee pain and anemia and gastrointestinal disorders: Dr. Frank Melidona, Dr. Randy Hofius, Dr. Sheryl Simon, Jameson Hospital North Campus and Dr. Stuart Gardner. (R. at 72-77).  In making his determination, the ALJ reviewed all the records obtained from each of the caregivers dating back to as early as 2002. (R. at 16-17).  The ALJ specifically noted and evaluated medical records from Dr. Melidona and Dr. Gardner pertaining to plaintiff's complaints of knee and back pain as early as February 2002, one month after plaintiff's previous application for SSI was submitted. (R. at 16).  The ALJ considered updated treatment records from Drs. Melidona and Gardner from April 2003 through February 2004.  (Id.)  With respect to plaintiff's anemia and gastrointestinal problems, the ALJ considered the medical records provided by Dr. Melidona, Dr. Hofius, Jameson Hospital and Dr. Simon.  (R. at 16-17).  These medical records, which were for a period at least twelve

months prior to plaintiff filing his application, and information provided by plaintiff regarding

his limitations and ability to function constitute a record from which the ALJ could determine

that plaintiff was not disabled.  Plaintiff is seeking SSI benefits.  The development of a complete

medical history for SSI benefits related to at least the twelve-month period preceding the filing of

an application.  See 20 C.F.R. § 416.912(d) ("[W]e will develop your complete medical history

for at least the 12 months preceding the month in which you file your application unless there is a

reason to believe that development of an earlier period is necessary or unless you say that your

disability began less than 12 months before you filed your application.").

While plaintiff argues that the ALJ's failure to obtain medical records after the date of

plaintiff's application resulted in prejudice and unfairness at the administrative proceedings, an

administrative law judge's failure to obtain medical records will not automatically result in

remand.  Massey, 2008 WL 4425853, at *3.  The plaintiff is required to show that he or she has

been prejudiced by the administrative law judges's failure to secure relevant records.  Id.  Here,

plaintiff did not show that the ALJ's failure to obtained medical records after the date of

plaintiff's application prejudiced him.  Notably, plaintiff did not offer any additional medical

evidence showing that the ALJ failed to secure relevant medical documents prior to making his

decision.  See e.g., Nelson v. Apfel, 131 F.3d 1228, 1235 (7th Cir.1997) (quoting Binion v.

Shalala, 13 F.3d 243, 246 (7th Cir. 1994)) ("Mere conjecture or speculation that additional

evidence might have been obtained in the case is insufficient to warrant remand."); Weakland v.

Astrue, Civil Action No. 08-22, 2009 WL 734713, at *7 (W.D. Pa. Mar. 19, 2009) (holding that,

"[a]s plaintiff has failed to demonstrate prejudice or unfairness in the administrative proceeding

resulting from her lack of counsel, the court finds that a remand would be inappropriate in this case"); Massey, 2008 WL 4425853, at *3 .

Because plaintiff failed to show that he was prejudiced by the ALJ's failure to secure medical records after the date of plaintiff's application, he did not meet his burden.  The ALJ evaluated plaintiff's medical records for the two years preceding plaintiff's application for SSI. Under those circumstances, the court finds that even if the ALJ failed to meet the heightened duty to plaintiff, as an unrepresented claimant, a remand is not warranted due to plaintiff's failure to show prejudice.

> ### 2.    *Whether the ALJ Properly Determined that Plaintiff's Subjective Complaints Were Not Credible*

In further support of remand, plaintiff contends that the ALJ failed to develop fully the record and improperly made a credibility determination regarding plaintiff's subjective complaints.  Specifically, plaintiff argues that the ALJ had no evidence regarding plaintiff's complaints and failed to obtain that kind of evidence through a full and fair hearing.

In response, defendant argues that the ALJ properly determined that plaintiff's subjective complaints were not fully credible.  Defendant specifically argues that the ALJ properly determined that plaintiff's subjective complaints were contradicted by medical evidence. Defendant argues that while plaintiff contends that the ALJ had no evidence of plaintiff's limitations or pain, the ALJ, in fact, considered evidence of those limitations and pain provided by the State Agency's medical consultant.  (Def.'s Br., Doc. No. 10 at 12).

"'The authority to evaluate the credibility of [the claimant] concerning pain and other subjective complaints is reserved for the ALJ.'"  Gilmore v. Barnhart, 356 F.Supp. 2d 509, 513

14

(3d Cir. 2005) (citations omitted).  While an administrative law judge must give a claimant's

subjective complaints "serious consideration," Powell v. Barnhart, 437 F.Supp. 2d 340, 342

(E.D. Pa. 2006) (citing Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002)), "the ALJ may

reject a claimant's complaints if he does not find them credible."  Id. (citing Schaudeck v.

Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999)); Hirschfield v. Apfel, 159 F.Supp. 2d

802, 811 (E.D. Pa. 2001)(citing Capoferri v. Harris, 501 F.Supp. 32, 37 (E.D. Pa. 1980), aff'd

649 F.2d 858 (3d Cir. 1981).  Moreover, "if supported by substantial evidence, the ALJ's

credibility findings may not be disturbed upon appeal." Hirschfield, 159 F.Supp. 2d at 811 (citing

Van Horn v. Schweiker, 717 F.2d 871, 871 (3d Cir.1983); Smith v. Califano, 637 F.2d 968, 972

(3d Cir.1981)).

  In this case, the ALJ addressed plaintiff's subjective complaints.  The ALJ specifically

addressed plaintiff's complaint that back and knee pain, as well as anemia and gastrointestinal

problems, prevent him from working.  (R. at 19).  The ALJ rejected these complaints, however,

based upon his evaluation of the medical evidence.  (Id.)  The ALJ found that plaintiff's "clinical

course has been unremarkable."  (Id.)  The ALJ found that the medical evidence provided by Dr.

Melidona and Dr. Gardner relating to plaintiff's back and knee complaints reflect that plaintiff

had pain, but there was "little clinical information . . . beyond [plaintiff's] treatment and

examinations by Dr. Melidona and Dr. Gardner."  (R. at 19).  The ALJ noted that neither Dr.

Melidona nor Dr. Gardner indicated that there was any injury to plaintiff's knee or back and did

not suggest that plaintiff is unable to function as a result of pain.  (Id.; R. at 180-82, 90-98).  The

ALJ considered information that plaintiff provided regarding his ability to walk, stand and

function and found these statements inconsistent with his claim that he is unable to work.  (R. at

15

19).  The ALJ evaluated this evidence and found that it was inconsistent with plaintiff's subjective complaints.  (Id.)  The court finds that there is sufficient evidence from which the ALJ could make a determination that plaintiff's treatment was unremarkable.

With respect to plaintiff's anemia and gastrointestinal problems, the ALJ addressed the reports of Dr. Simon. (R. at 19, 172-78).  While the ALJ recognized the severity of these conditions, he rejected plaintiff's complaint that they prevented him from working on the basis of plaintiff's own written statements regarding his ability to function and because the State Agency medical consultant opined that plaintiff could engage in light physical exertion.  (R. at 20, 213-20).  The ALJ noted that no physician had made a determination that plaintiff is unable to work as a result of these conditions.  (R. at 19-20).  The court already concluded that the ALJ did not fail to develop fully the record prior to making this credibility determination.  The ALJ evaluated medical evidence for the two years prior to plaintiff's application for SSI and gave specific reasons based upon medical evidence for rejecting plaintiff's claims.

The ALJ addressed each of plaintiff's subjective complaints and evaluated them based upon the medical evidence of record.  Under those circumstances, the ALJ's determination regarding plaintiff's subjective complaints is supported by substantial evidence in the record.

### 3.      Whether the Plaintiff Adequately Waived his Right to Appear at a Hearing Before the ALJ

Plaintiff argues that remand is appropriate because he did not receive a full and fair hearing.  Plaintiff contends that he did not validly waive his right to a hearing before the ALJ.  According to plaintiff, he unknowingly waived his right to a hearing "and, in effect, his right to

16

counsel." (Pl.'s Br., Doc. No. 8 at 16).  Plaintiff argues that his lack of counsel prejudiced him, denied him a fair administrative proceeding and, therefore, the record before the ALJ was "patently inadequate." (Id. at 19).

In response, defendant argues that plaintiff knowingly and voluntarily waived his right to a hearing before the ALJ and his right to counsel and, therefore, remand is not appropriate.

A claimant has a statutory and regulatory right to be represented by counsel at a social security disability hearing. 42 U.S.C. § 405; 20 C.F.R. §§ 404.1700-07; see Phifer v. Comm' of Soc. Sec., 84 Fed. App'x 189, 190 (3d Cir. 2003).  A claimant must be given notice of his or her right to counsel, but may waive that right so long as the waiver is knowing and intelligent.  See Smith v. Schweiker, 677 F.2d 826, 828 (11th Cir. 1982).  Waiver of counsel itself will not be grounds for remand.  Livingston v. Califano, 614 F.2d 342, 345 (3d Cir.1980).  Remand will be appropriate, however, "where the lack of counsel prejudices a claimant or where lack of counsel leads to an administrative proceeding marked by unfairness."  Phifer, 84 Fed. App'x at 190-91.

A social security claimant is entitled to receive meaningful notice and an opportunity to be heard before his claim for disability benefits can be denied.  20 C.F.R. § 416.1450(a); see Brunner v. Astrue, Civil Action No. 07-124, 2008 WL 4372726, at *5 (W.D. Pa. Sept. 23, 2008) (citing Stoner v. Sec'y of HHS, 837 F.2d 759, 760-61 (6th Cir. 1988)).  A claimant may waive his or her right to appear before an administrative law judge by a signed writing indicating that he or she does not wish to appear.  20 C.F.R. §§ 404.948(b)(1)(I), 416.1450(b).  A written waiver of hearing will be valid where it shows:

> [1] that the individual has been informed of the nature of the proceedings and of the right to be represented by counsel; [2] that the individual has a right to appear and testify at the hearing and to present evidence; [3] that additional evidence

obtained through the individual's appearance and testimony may be of value to the
ALJ in evaluating the issues; [4] that if the individual does not appear, the matter
will be decided solely on the written evidence in the file plus any additional
evidence submitted by the individual or obtained by the ALJ; and that the
individual may withdraw the waiver of the right to appear at the hearing any time
prior to mailing of the notice of the decision.

Brunner, 2008 WL 4372726, at *5 (citing SSR 79-19).

Here, plaintiff argues that he did not knowingly waive his right to counsel and as a result

of not having counsel, he did not knowingly waive his right to appear at the administrative

hearing.  While plaintiff relies on Vivaritas v. Comm'r of Soc. Sec., 264 Fed. App'x 155, 160

(3d Cir. 2008), to support his contention that he did not validly waive his right to appear at the

administrative hearing with counsel, this case is  inapposite to the instant matter.  In Vivaritas,

the United States Court of Appeals for the Third Circuit held that the plaintiff did not validly

waive her right to counsel based upon the plaintiff, during the administrative hearing, offering

evidence of a mental impairment that would potentially prevent her from knowingly and

intelligently waiving her right.  Id.

Here, plaintiff did not make any claim that he was unable to understand that he was

waiving his right to counsel.  Rather, plaintiff contends that his receipt of the waiver form, after

notifying the Hearing Office that he was unable to attend the initially scheduled hearing, resulted

in unfairness.  This argument is not persuasive.  Plaintiff did not allege that he misunderstood the

waiver due to some impairment.  It is evident from the record that plaintiff was advised of his

right to a hearing and to counsel and voluntarily waived both.

In response to his request for an administrative hearing, plaintiff received a letter from the

Social Security Administration advising him of the importance of attending the hearing and his

right to representation at the hearing.  (R. at 40).  Additionally, he was provided a list of legal

services organizations that could provide him with free representation.  (R. at 43).  On the form

entitled "Waiver of Your Right To Personal Appearance Before An Administrative Law Judge",

plaintiff was advised as follows:

> I have been advised of my right to appear in person before an Administrative Law
> Judge. I understand that my personal appearance before an Administrative Law
> Judge would provide me with the opportunity to present written evidence, my
> testimony, and the testimony fo other witnesses.  I understand that this opportunity
> to be seen and heard could be helpful to the Administrative Law Judge in making
> a decision.

 (R. at 53).  The waiver provided:

> *       I understand that if I do not appear before an Administrative Law Judge, I
>         still have the right to present a written summary of my case, or to enter
>         written statements about the facts and law material to my case in the
>         record.
>
> *       If I change my mind and decide to request a personal appearance before
>         the Administrative Law Judge, I understand that [sic] should make this
>         request to the Hearing Office before the decision of the Administrative
>         Law Judge is mailed to me.
>
> *       I understand that I have a right to be represented and that if I need
>         representation, the Social Security office or hearing office can give me a
>         list of legal referral and service organizations to assist me in locating a
>         representative.

(Id.)  Plaintiff signed and dated this waiver below these statements.  (Id.)  The written waiver

provided all the necessary information for a valid waiver.

Plaintiff stated that one of his reasons for not attending the hearing was his belief  his

appearance "would not add any more information" to his case.  (Id.)  Plaintiff had previously

applied for SSI in 2002 and appeared with counsel at a hearing.  There is no evidence of record

regarding his being unable to understand the importance of his appearance and the consequences

of not attending the hearing.  Plaintiff failed to show that he was prejudiced by his lack of counsel or failure to appeal at the hearing.  The ALJ reviewed relevant medical evidence from several medical care providers for a two-year period prior to plaintiff's application.  The ALJ considered plaintiff's statements and weighed those statements against the medical evidence of record.  Plaintiff did not point to any medical evidence which was not produced that contradicts the ALJ's findings.  Under those circumstances, the court concludes that plaintiff knowingly and intelligently waived his right to counsel and his right to appear at an administrative hearing.  See e.g. Weakland, 2009 WL 734713, at *7; Cole v. Soc. Sec. Admin., Civil Action No. 07-5259, 2008 WL 5157919, at **6-7 (E.D. Pa. Dec. 9, 2008).


### Conclusion

Based upon the foregoing, there is substantial evidence of record to support the ALJ's decision.  Plaintiff's motion for summary judgment will be denied and defendant's motion for summary judgment will be granted.  An appropriate order follows.


By the court,

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge


Dated: August 17, 2009